IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D.M.,[1]

        Plaintiff,

vs.                                         Case No. 19-1146-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

## MEMORANDUM AND ORDER

On January 14, 2016, plaintiff filed an application for social security disability insurance benefits. Plaintiff alleged a disability onset date of December 24, 2014. The application was denied initially and on reconsideration. An administrative hearing was conducted on January 22, 2018. The administrative law judge (ALJ) considered the evidence and decided on May 15, 2018 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initials are used to protect privacy interests.

1

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)). This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229). It does not require a preponderance of the evidence. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21

F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. THE ALJ'S DECISION (Tr. 15-28).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 16-17). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is

3

able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through September 30, 2018. Second, plaintiff has not engaged in substantial gainful activity since December 24, 2014. Third, plaintiff has the following severe impairments: degenerative joint disease left knee with ganglion cyst; degenerative joint disease right shoulder; degenerative disc disease; obesity; posttraumatic stress disorder, and major depressive disorder. More precisely as to plaintiff's mental impairments, the ALJ found that plaintiff had moderate limitations in the following areas: understanding, remembering or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Tr. 19-20). The ALJ, however,

4

stated that these limitations were not to be considered a residual functional capacity assessment. (Tr. 20).

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform a range of work between light and sedentary with physical and mental conditions. The mental conditions were that: plaintiff is able to understand, remember, and carry out simple instructions and perform simple, routine tasks; he is able to interact occasionally with the public; and he is able to perform work that does not require interaction or coordination with others to complete job tasks. Finally, based upon the testimony of a vocational expert, the ALJ determined that plaintiff cannot perform his past relevant work but that he can perform other jobs existing in the national economy, such as document preparer, cutter/paster, and addresser.

In reaching this decision, the ALJ discussed the evidence relating to plaintiff's mental limitations as follows:

> The claimant alleged that he has difficulty remembering, going to doctor's appointments without reminders, and taking medications without reminders. However, the claimant also stated in his function report that he could perform simple maintenance, prepare meals, pay bills, and shop (Exhibit 5E). In addition, the record shows that the claimant was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and

5

respond to questions from medical providers. (Tr. 19-20).

[C]laimant alleged that he has difficulty getting along with others, dealing appropriately with authority, and spending time in crowds. However, according to his statements, the claimant is also able to shop in stores, spend time with friends and family, and live with others. (Tr. 20).

The claimant contended that he has limitations in concentrating and focusing. On the other hand, the claimant said in his function report that he is also able to prepare meals, watch television, manage funds, follow instructions and handle his own medical care. (Tr. 20).

[T]he claimant testified he experiences symptoms of anxiety and depression. He endorsed occasional flashbacks and panic attacks that can be triggered by something as simple as a car backfiring. He stated he gets irritable with "stupidity," saying it has caused him to lose jobs in the past. (Tr. 21).

[C]laimant has a history of mental health impairments. In November 2014, he presented to the walk-in clinic with an interest in reengaging in mental health services . . . He was alert and oriented with fair grooming and hygiene . . . He was cooperative with an irritable mood and congruent effect . . . His thought processes and content were normal . . . His memory was intact with fair insight and judgment. (Tr. 23).

At an intake assessment in January 2015, the claimant reported symptoms of depression and anxiety . . . He was alert and oriented with a depressed, anxious, irritable mood and blunted affect . . . His thoughts were logical and goal directed with reported illusions . . . His concentration was improving with intact insight . . . His judgment and fund of knowledge were adequate and his memory was grossly intact . . . He was diagnosed with major depressive disorder, PTSD, and mild alcohol use disorder . . . He was prescribed Sertraline and Trazodone and encouraged to return to a PTSD support group. . . (Tr. 24).

[T]he claimant reported being a tattoo artist for fifteen years to supplement his income . . . He also

stated he had been a chef and would like to own his own restaurant but he cannot stand for long periods working in a kitchen . . . He endorsed daily nightmares about various events from his deployment in Iraq . . . He seemed most distressed about his tendency to get angry with "stupid people" and complained he has a difficulty with his memory, stating he puts appointments in his phone. . . . He acknowledged he had needed treatment for some time. (Tr. 24).

In March 2016, the claimant presented for a psychological consultative evaluation with Greg Smith, Ph.D. . . . He reported significant symptoms of recurrent depression and PTSD . . . He was alert and oriented with an appropriate mood and restricted affect . . . His speech was normal, though he gave short answers, and his thought processes were normal . . . He was not able to recite the months backwards . . . He was able to remember one of three words after a delay . . . His digit span was five forwards, which was normal, and three backwards, which was below normal. . . (Tr. 24).

The undersigned has considered the nature and effectiveness of the treatment received by the claimant. His treatment has essentially been routine and conservative in nature. . . He has reported some improvement with treatment. The undersigned is not persuaded that this factor is entirely consistent with the claimant's allegations of disability. (Tr. 25).

The undersigned has considered the claimant's daily activities. In his function report, the claimant stated he lives in a house with family . . . He stated he takes care of children, has no problems with personal care, prepares his own meals, and completes light household chores . . . He stated he shops in stores for groceries once a month and goes outside every day . . . He stated he is able to pay bills and manage funds . . . He stated he spends time with others daily but has problems getting along with others, stating he can "tolerate" authority figures . . . He indicated he needs reminders for medications and personal care, but does not need to be reminded to go places . . . He responded "it depends" when asked how long he can pay attention, but noted he has no difficulty finishing what he starts and follows instructions well . . . He stated he handles stress moderately well, but had difficulty adapting to changes in routine. . . . He described his typical day as getting

7

> his son ready for school, watching television until he
> picks his son up, make dinner for his family, help with
> homework, and shower before he goes to bed . . . (Tr.
> 25)
>
> Despite his impairments, the claimant has engaged in a
> somewhat normal level of daily activity and interaction.
> Some of the physical and mental abilities and social
> interactions required in order to perform these
> activities are the same as those necessary for obtaining
> and maintaining employment. The claimant's ability to
> participate in such activities undermines the claimant's
> allegations of disabling functional limitations. (Tr.
> 25).
>
> The undersigned has considered the opinions of State-
> agency psychological consultants Steve Akeson, Psy.D.
> and Myrna Tashner, Ed.D. dated April 5, 2016 and June
> 15, 2016, respectively. . . The consultants opined the
> claimant has the capacity for unskilled work, in that he
> can acquire and retain at least simple instructions and
> sustain concentration and persistence with at least
> simple, repetitive tasks. . . He can relate adequately
> to others in settings that do not require frequent public
> contact or unusually close interaction . . . Finally, he
> can adapt to changes in non-complex work environments .
> . . These opinions are well supported by and consistent
> with the medical evidence of record. . . . [They] are
> afforded considerable weight. (Tr. 26).

III. PLAINTIFF'S ARGUMENTS JUSTIFY REVERSAL AND REMAND.

Plaintiff's arguments to reverse and remand the denial of benefits focus upon the mental limitations found by Dr. Greg Smith after he performed a consultative examination. The ALJ gave Dr. Smith's report "considerable weight." But, plaintiff claims that the ALJ failed to correlate the mental limitations discussed in Dr. Smith's report to the RFC and the hypothetical question posed to the vocational expert. Plaintiff contends that the RFC and the hypothetical do not account for the limitations Dr. Smith placed

8

upon: 1) plaintiff's ability to interact and maintain relations with supervisors; 2) plaintiff's ability to persist at tasks due to problems with concentration and memory; and 3) plaintiff's ability to tolerate stress.

Dr. Smith concluded in a report at Tr. 400-02 that plaintiff had symptoms of recurrent depression (which were partially controlled through medication) and symptoms of PTSD. He further found that, consistent with his depression and anxiety, plaintiff had difficulty with concentration and memory. Dr. Smith stated that plaintiff had the ability to carry out intermediate level instructions but may have difficulty working persistently at tasks because of his problems with concentration and memory. Dr. Smith concluded that plaintiff had a "minimal" ability to tolerate stress and a "minimal" ability to maintain appropriate relations with coworkers and supervisors and the public because of plaintiff's anger and irritability.

As already noted, the ALJ determined that Dr. Smith's opinion was consistent with the medical evidence and gave his opinion considerable weight. (Tr. 26). She stated that Dr. Smith's opinion was no more restricting than the limitations she set forth her RFC formulation. Id.

To repeat, the RFC stated that: plaintiff is able to understand, remember, and carry out simple instructions and perform simple, routine tasks; he is able to interact occasionally

with the public; and he is able to perform work that does not require interaction or coordination with others to complete job tasks. This RFC does not explicitly address plaintiff's problems with concentration and memory or his ability to tolerate stress. It speaks more directly to plaintiff's minimal ability to maintain appropriate relations with coworkers, supervisors and the public.

The ALJ's hypothetical to the vocational expert asked the expert to assume, among other things, that an individual could understand, remember and carry out simple instructions; perform simple routine tasks; interact occasionally with the public; and perform work that does not require interaction or coordination with others to complete job tasks. (Tr. 53-54). Again, this hypothetical does not explicitly address plaintiff's problems with concentration and memory, and with tolerating stress. But, it speaks somewhat more directly to plaintiff's minimal ability to maintain appropriate relations with coworkers, supervisors and the public.

Plaintiff argues, and defendant does not dispute, the following propositions: 1) that Social Security regulations require that an ALJ explain why a medical source opinion was not adopted if it conflicts with the RFC assessment (see SSR 96-8p, 1996 WL 374184 at *7); 2) that the Tenth Circuit has held that when an ALJ gives weight to an opinion, the ALJ must explain why he rejects some of the limitations in the opinion while adopting

others (see Wilson v. Colvin, 541 Fed.Appx. 869, 873-74 (10th Cir. 2013) and Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007)); and, 3) that this court has ordered a remand when the ALJ gives substantial weight to a medical opinion but fails to include all of limitations stated in the opinion in the RFC (e.g., Lodwick v. Astrue, 2011 WL 6253799 *4 (D.Kan. 12/13/2011)(citing several cases).

Defendant contends that the RFC is as restricting as Dr. Smith's limitations for the following reasons. First, the ALJ limited plaintiff's work interactions to jobs that did not require interaction or coordination with "others" to complete job tasks. Defendant asserts that it is sensible to treat the term "others" as including supervisors. Second, the ALJ's decision limited plaintiff to "unskilled" occupations, which involve only very short and simple instructions, require minimal judgment and simple decision-making, happen in a "routine" work setting, require the ability to pay attention for only two-hour segments in between normal breaks, and have the lowest social demands. Finally, defendant appears to concede that the ALJ's RFC formulation did not explicitly incorporate Dr. Smith's finding that plaintiff had a minimal ability to tolerate stress. But, defendant argues that it is reasonable to infer that plaintiff's capacity to handle stress would be adequate for the unskilled work to which he was limited in the RFC.

The court will not attempt to resolve whether an RFC limiting plaintiff's work to jobs not requiring interaction or coordination with "others" to complete job tasks sufficiently accounts for Dr. Smith's finding that plaintiff has a minimal ability to maintain appropriate relations with supervisors. It is unnecessary to decide this issue because plaintiff's other two arguments justify reversing and remanding the denial of benefits.

Where a medical source opinion has been given substantial weight and that opinion substantiates "problems with concentration and memory," "difficulty" working persistently at tasks, and a minimal ability to tolerate stress, it is error not to include those limitations in the RFC. In Jaramillo v. Colvin, 576 Fed.Appx. 870, 875 (10th Cir. 2014), the court stated that an ALJ's limitation to unskilled work "could be used as shorthand for the specific mental abilities described in SSR 85-15, to-wit: '[t]he basic mental demands of competitive, remunerative, unskilled work [including] the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" The ALJ in Jaramillo gave "great weight" to the report of a psychiatrist who found that the plaintiff was moderately limited in his ability to carry out instructions, attend and concentrate, and work without supervision. Id. at 876. The Tenth Circuit

12

reversed and remanded a denial of benefits on the grounds that the ALJ did not include in his hypothetical to the vocational expert the moderate impairments that the psychiatrist found. Id. The court thereby found that the limitation to unskilled work by the ALJ did not adequately account for the moderate limitations found by the psychiatrist. The court cited to Wiederholt v. Barnhart, 121 Fed.Appx. 833, 839 (10th Cir. 2005) for the holding that a limitation "to simple, unskilled job tasks" was insufficient to incorporate "moderate difficulties maintaining concentration, persistence, or pace". Jaramillo, 576 Fed.Appx. at 877.

This court reached a similar conclusion in Umbenhower v. Colvin, 2015 WL 1470494 *4 (D.Kan. 3/31/2015) where the court concluded that an ALJ finding of moderate difficulty in maintaining concentration, persistence and pace, or an ALJ finding giving great weight to a medical opinion with that limitation, is not incorporated in a RFC limitation to simple, routine, repetitive and unskilled tasks. See also, Yurt v. Colvin, 758 F.3d 850, 858-59 (7th Cir. 2014)("we have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence and pace"); Dix v. Berryhill, 2018 WL 2683784 *4 (D.Kan. 6/5/2018)(RFC limitation to unskilled work does not account for doctor's opinion substantiating severe short-term

13

memory problems); Roberts-Jewell v. Astrue, 2012 WL 1388733 *9 (D.Kan. 4/20/2012)("this district has long recognized that there is no factual basis for a presumption that unskilled work is non-stressful").

Here, the RFC did not explicitly restrict plaintiff to "unskilled work." Nor did the hypothetical question to the vocational expert. The ALJ limited plaintiff to jobs with simple instructions and routine tasks that did not require interaction or coordination with others or more than occasional interaction with the public. The court credits the ALJ for a fairly extensive discussion of the evidence pertinent to plaintiff's mental limitations. But, this discussion does not explain why the ALJ credited Dr. Smith's opinion, but omitted some of the restrictions described by Dr. Smith from the RFC and the hypothetical question to the vocational expert. Contrary to the ALJ's comment that "Dr. Smith's opinion is no more restricting than the limitations in the [RFC]" (Tr. 26), the RFC appears less restricting without adequate explanation.

The court rejects defendant's argument that the ALJ reasonably inferred that plaintiff's ability to handle stress was adequately described in the RFC. The RFC and the hypothetical do not explicitly mention stress or specific job characteristics which may be relate to stress. While the Tenth Circuit has held that an ALJ may "specifically find and explain how a mental

impairment is addressed by a limitation in skill level" (<u>Lane v. Colvin</u>, 643 Fed.Appx. 766, 769 (10th Cir. 2016)), the premise of defendant's argument admits there are no such specific findings and explanations here. Thus, as in <u>Dix</u>, <u>supra</u> at *5, where the ALJ failed to express mental impairments in terms of work-related mental activities with sufficient precision, we find that remand is the proper outcome.[2]

IV. CONCLUSION

For the above-stated reasons, the court directs that the decision to deny benefits be reversed and this matter be remanded for additional administrative proceedings consistent with this opinion. This case is being remanded pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk is directed to enter a judgment in accordance with Fed.R.Civ.P. 58.

**IT IS SO ORDERED.**

Dated this 26th day of November 2019, at Topeka, Kansas.

s/Sam A. Crow_____
United States District Senior Judge

---

[2] We agree with plaintiff that, contrary to defendant's final argument, plaintiff's counsel's failure to question the vocational expert does not make plaintiff responsible for any error found herein. As plaintiff states in the reply brief, plaintiff's counsel could not have known what weight the ALJ would give to Dr. Smith's opinion at the time of the administrative hearing.